## No. 10,390.

### WHITLOCK v. ALLIANCE COAL CO., ET AL.

#### Decided April 2, 1923.

Action to restrain the sale of real property under writ of execution.   Judgment of dismissal.

### *Reversed.*

1.  INJUNCTION—*Sale under Execution.* Under the facts of the case considered, it is held that plaintiff could properly maintain an action to restrain the sale of real property under execution.

2.  HOMESTEAD—*Execution—Affidavit.* Before a judgment creditor may have an execution levied upon a debtor's homestead, he must file the affidavit required by section 5930, C. L. 1921, and where a levy is made without such affidavit, the debtor is entitled to an injunction restraining the sale.

3.  EQUITY—*Determination of all Questions.* A court of equity having obtained jurisdiction of a case for one purpose, may dispose of all controverted questions presented by the issues. Sometimes, however, it will dispose only of those on the particular issue upon which the jurisdiction is based.

4.  STATUTES—*Construction.* Section 5273 C. L. 1921 which confers upon county courts power to authorize administrators to bring certain actions in district courts is in aid of county court jurisdiction, and not a surrender of a part of the same to the district court.

5.  PROBATE LAW—*Classification of Claims Against Estates.* The classification of claims against the estate of a decedent in the first instance, is peculiarly and exclusively within the probate jurisdiction of the county court.

*Error to the District Court of Pueblo County, Hon. James A. Park, Judge.*

Messrs. STEWART, PHELPS & BAKER, for plaintiff in error.

Mr. FRANK MCLAUGHLIN, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

IN November, 1918, The Alliance Coal Company, one of the defendants in this action, recovered a judgment in the district court of Denver county, Colorado, against E. S. Whitlock. More than three years thereafter, in February, 1922, the judgment creditor sued out an execution, directed to the sheriff of Pueblo county, which was levied upon lots 9 and 10, and lots 33 and 34, block 102, in Fletcher Hill addition to the City of Pueblo, property of Whitlock, and these lots were advertised for sale on April 1, 1922. On lots 33 and 34 was a house in which Whitlock lived with his family until his death. Before the judgment was rendered, Whitlock, by causing the word "homestead" to be entered in the margin of his record title, became entitled to the full benefits of our homestead act, which, *inter alia*, exempted the homestead, in whole or in part, from the lien and execution of this judgment. Five days before the advertised day of sale, and on March 27th, Whitlock died intestate. On March 30th Lucinda G. Whitlock, his widow, was appointed and qualified as administratrix of his estate. So far as the administratrix knows, her husband left no personal property, except a small deposit in bank, and some household goods, all of a value of about $575. The only real estate which Whitlock owned at the time of his death, were the homestead on lots 33 and 34, and lots 9 and 10 on which there was a small house, the value of the former being approximately $3,000, and the latter about $2,000. On the homestead was a trust deed that secured an indebtedness of Whitlock in the sum of

$1250, all of which was due at the time of his death and which was a valid lien. Neither the judgment creditor, nor any one for him, filed an affidavit previous to the levy of the execution, which section 2956 Rev. Stat. 1908; section 5930 Comp. Laws 1921, makes a condition precedent to the right to levy on a homestead. Upon learning of the purpose of the sheriff to make the sale as advertised, Mrs. Whitlock, before an inventory of the estate property was filed, or an estimate of the widow's allowance, or an order of the county court approving or confirming the appraised estimate, was made, in her capacity as administratrix, and in her individual capacity as Whitlock's widow and one of his heirs at law, brought this action in the district court of Pueblo county to restrain the advertised sale. Upon a showing of the proper emergency, the court, without notice to the defendants, and upon giving by plaintiff of the required bonds, issued a temporary restraining order, as prayed for. The defendants, the judgment creditor, his attorney, and the sheriff, filed a general demurrer to the complaint, and, upon a hearing, the court sustained the demurrer, and, when plaintiff elected to stand by her complaint, dismissed the action at the plaintiff's costs, and she is here with a writ of error to have the judgment reviewed.

Upon the admitted facts of the complaint, and under the appropriate sections of our statute, four principal questions are submitted for decision: 1. Is the case made one for equitable relief? 2. Is the homestead subject to the levy? 3. Are Lots 9 and 10 subject to the levy? 4. Is the widow's allowance a lien or right superior to the lien of the judgment and of the levy of a valid execution, as to the homestead and non-homestead property, or as to either?

1. The defendants do not seriously question the right of a judgment debtor, or his representative, to an injunction restraining the sale of this real estate under a void execution. Their objections to this restraining order are, first, that the execution was not void, and that the suit was premature, because the widow's allowance, to preserve

which was one of its objects, was not ascertained when the complaint was filed, and, under our statute, could not be set aside by the county court until after an inventory of the estate was made and returned into court, an appraisement thereof had, and an order of the court entered approving the appraiser's estimate. The defendants are right in saying that the allowance may not be made until after these statutory steps have been taken. If, however, the plaintiff is entitled to equitable relief, the objection based upon non-ascertainment of the widow's allowance, does not prevent her from protecting her rights, if any, in the property which the defendants threatened to sell. She sues in her individual capacity, as an heir at law of Whitlock, and also in her capacity as administratrix. In the former capacity she might institute this action in the absence of any statute upon the subject. As administratrix the county court, by chapter 250, Sess. Laws of 1921; Comp. Laws 1921, section 5273, may give, and, upon a petition by her, the county court did give, her permission to bring this suit in the district court. The statute authorizes the county court to make such an order when the object is to quiet title to real property of the estate, to remove a cloud therefrom, or to procure any legal or equitable relief to make marketable the title thereto. The complaint so alleges. Just what is the scope of such a suit, and what the effect of the decree of the district court may be, we do not decide, but it would seem that the suit is in aid, not a parceling between the two tribunals, of the jurisdiction of the county court in administering estates. It seems to us that this plaintiff, in her individual capacity as an heir of Whitlock, in the absence of the statute, upon recognized grounds of equity jurisdiction to save a multiplicity of suits and to prevent irreparable injury, where complicated questions of law are involved, where the orderly administration of this estate is interfered with, where exempt property is levied on, as well as in her representative capacity as administratrix of Whitlock's estate, by the terms of the statute, is given jurisdiction to

maintain this action and is entitled to equitable relief, if the execution upon which the threatened sale is based, is void.  18 Cyc. 1487; 23 C. J. 553, 559; *Rice v. Amer. Nat. Bank,* 3 Colo. App. 81, 31 Pac. 1024; *Irwin v. Beggs,* 24 Colo. App. 158, 162, 132 Pac. 385.

Defendants, however, cite and rely upon cases collated in 17 Cyc. pp. 1073, 1074, holding that when an execution under a judgment issues and a levy thereof is made, before the death of the owner, and, as here, where the sale is being advertised, though not carried into effect during his lifetime, it will not be enjoined by the administrator or heirs, because the lien attaches as against them as of the date of the death of the decedent.  Some of the cases hold that the provision of statutes, like ours, which forbids any sales, or execution, on judgments, and, without giving certain notice to an administrator, prevents foreclosures or enforcement of liens until after the lapse of a fixed period of time, applies to levies begun, but not completed, at the time of death.  But we do not pause to consider this contention and express no opinion as to whether or not under a valid execution, and where a homestead is not involved, and the other equitable elements of the instant case are absent, an execution, levied before the death of the owner of the property levied upon, may not be carried into effect after his death without hindrance by the courts. And this leads us to the consideration of the second question.

2.   Section 2950 Rev. Stat. 1908; Section 5924 Comp. Laws 1921, gives to every householder in this state, being the head of a family, a homestead not exceeding in value the sum of $2,000, exempt from execution and attachment, arising from any debt, contract or civil obligation.  Whitlock took the proper steps required by the statute to perfect his homestead right.  Section 2956 Rev. Stat. 1908; section 5930 Comp. Laws 1921, provides that when any creditor is of the opinion that a homestead is of greater value than $2,000, on filing affidavit of that fact, with the clerk of the district court, he may proceed against the

homestead as in ordinary cases, and if it shall sell for more than $2,000 and costs, the excess shall be applied to the payment of the creditor's demand, but in every such case, $2,000, free of charge or expense, shall be paid to the owner of the homestead, and if it shall not sell for more than $2,000 and costs, the proceeding under this section does not affect or impair the rights of the owner. For the purposes of the demurrer, defendants admit that such affidavit was not filed. They contend, that, since it could not be ascertained in advance of an actual sale whether the homestead would sell for more, or less, than $2,000, this affidavit need not be filed before a levy is made, but may be lodged with the district court after a sale, under the levy. The statute does not so read. It says that, on the filing of the affidavit, not after the filing, may a creditor proceed against the homestead as in ordinary cases. In ordinary cases, to enforce a judgment out of real estate, the first step is to take out an execution, or cause to be levied a previously issued execution, by filing a certificate thereof with the recorder of the county where the property is situate. The creditor may not proceed, as in ordinary cases, without following the statutory method. He can not proceed without doing some required act in making a levy. The affidavit must be made before he begins these statutory proceedings. This has been expressly decided by our Court of Appeals in the case of *Copeland v. Bank,* 13 Colo. App. 489, 492, 59 Pac. 70, where Judge Thomson, in a case where no affidavit was filed in behalf of the judgment creditor, said: "Up to a value of $2,000, it (the homestead) was exempt from execution, and whatever its value, no levy could lawfully be made upon it without the previous filing of the affidavit. The levy of this execution was therefore void." If, as held by our Court of Appeals, the levy of an execution upon a homestead, without first filing the affidavit, is void, it necessarily follows that, in the instant case, the levy of this execution, although it was made prior to the death of the owner, is void as to the homestead, irrespective of its value. For

this reason the plaintiff was entitled to an injunction absolutely restraining the sale of the homestead property under this execution.

3. The third and fourth propositions may be considered, and disposed of, as one, being: whether the levy is good upon Lots 9 and 10, and whether the widow's allowance is superior to the lien of the judgment and a levy of a valid execution?

The plaintiff asserts that the levy upon these lots is void, and that the widow's allowance attaching, as she says, from the date of the co-existence of her marriage and her husband's seisin, and ripening into a perfect title upon her husband's death, is, as matter of law, superior to a valid judgment and the levy of a valid execution. The defendants deny both propositions. They raise important and far-reaching questions of law. It is a familiar rule that a court of equity, once having obtained jurisdiction of a cause for one purpose, may dispose of all controverted questions presented by the issues. Sometimes, however, it will dispose only of those that are necessary to sustain the judgment on the particular issue on which the jurisdiction is based. We have already adverted to the fact that the statute of 1921, which confers upon county courts power to authorize administrators and others to bring suits of this character in the district courts, is in aid of its own jurisdiction, and not a surrender of part of the same to the district court. It does not purport to confer authority upon the county court to delegate any of its exclusive, original jurisdiction to administer estates of deceased persons, or to vest in the district courts any part of such jurisdiction. On the contrary, its purpose seems to be to enable the county court, as the result of the judgment and decree that the district court may enter, properly to discharge its duty in exercising probate jurisdiction. Full opportunity is afforded by our statutes for a review by the district and by the Supreme Court of all final decrees and of many interlocutory orders of the county court in estate cases. The delegation of power by the Con-

stitution to the county courts of exclusive, original jurisdiction in such matters shows that it was the purpose of the people to have the county courts, in the first instance, pass on all questions properly incident to the exercise of probate jurisdiction. The classification of claims is peculiarly within the probate jurisdiction of the county courts. Section 5341 Comp. Laws 1921. The permissive statute of 1921, heretofore mentioned, does not contemplate that the county court shall give permission to an administrator to bring a suit in the district court for the purpose of giving the district court power to classify claims against estates. It is also to be observed that there should not be a distribution of this power of classification between two courts, each possessing original jurisdiction. By section 5341, *supra,* it is made the duty of the county court, at the time of the allowance, to class all demands against the estate, "and such demands shall be paid in their order, commencing with the first class, and when the estate is insufficient to pay the whole of the demands, such demands in any one class shall be paid *pro rata,* whether the same shall be due by judgment, writing obligatory or otherwise, except in such cases· as shall be herein excepted." The exception, if any, to such command of the statute, has no bearing upon this case. Section 5334 Comp. Laws 1921, reads: "No execution shall issue upon any judgment against a decedent,  *  *  *  but such judgment shall be filed, allowed and. paid in the same manner as other fourth class claims against such estate." Judgment claims, at the time this section was adopted in 1903, were in the fourth, but are now, under the Act of 1911, in the fifth, class of claims. It therefore appears from the mandatory provisions of our statutes that the classification of claims should, and must be made in the first instance, by the county court. To designate the relative rank of claims necessarily involves a classification thereof, as they must be placed in classes in accordance with their rank. It might result in inextricable confusion if some of the claims were classified by the county, and others by the district

court, and as no final and complete classification can be made until after the lapse of one year from the date of the issuance of letters of administration, within which time claims may be presented for allowance, it would be manifestly improper for this court at this time, or for the district court, to determine the relative rank of the widow's allowance and of defendants' judgment, which, in legal effect, would be a classification, and only a partial one, of the demands against this estate. Such original, and complete, classification and ranking should be reserved for, and made by, the county court, subject, of course, to review as provided, by law. We are of the opinion, therefore, that the rule in equity, which authorizes a court which once obtains jurisdiction of a controversy, to determine all questions involved therein, does not apply to the case in hand.

In addition to the foregoing, we might be passing upon a moot case if we now determine that the execution levy was valid as to lots 9 and 10, or that the widow's allowance was superior, or inferior, to the lien, either of the judgment or execution. This suit was brought, as already appears, before the widow's allowance was made. We can not anticipate what the amount of that allowance may be. In the nature of things the administratrix does not know, and, in law, was not supposed to know when she brought this suit, the extent of the property of the decedent. She might, as she avers in her complaint, hereafter discover other properties, both personal and real, belonging to the estate, and it might well be that neither of these questions would have to be decided by the county court, either in classifying claims or in satisfying the widow's allowance. These questions, therefore, should be decided, in the first instance, if it becomes necessary, by the county court, and not by us in this action. Decision now is not necessary, for the purpose of preserving and protecting the rights of plaintiff, so far as they exist or appear at the present time. Because the execution levied upon the homestead was void, that, of itself, under the facts appearing in the

complaint, entitled her to the relief prayed as against that property. For the reasons herein given, sale of the other lots, under the execution, should also be restrained. The restraining order, therefore, should not have been set aside, but should have been made permanent. The third and fourth propositions not decided here are left open for determination by the county court, when, and if, the same are properly presented to it. The judgment should be reversed and the cause remanded to the district court, with directions to set aside its order dismissing the action, and to set aside its order dissolving, and in lieu thereof, to make permanent the temporary restraining order as originally granted.

MR. JUSTICE DENISON dissents.