## No. 12,860.

### MIDLAND LIFE INSURANCE COMPANY *v.* FIRST NATIONAL BANK OF LAS ANIMAS ET AL.

(22 P. [2d] 860)

Decided May 15, 1933. Rehearing denied June 12, 1933.

Mr. Byron G. Rogers, Messrs. Sebree, Jost & Sebree, for plaintiff in error.

Mr. A. C. Johnson, Mr. Charles E. Sabin, for defendants in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

The plaintiff below, plaintiff in error here, Midland Life Insurance Company, filed in the Bent county district court what it designates as a bill of interpleader, naming as defendants the First National Bank and the Bent County Bank of Bent county. In substance, the bill alleges that plaintiff, in February, 1919, issued its policy of life insurance, No. 14221, for $5,000, on the life of Richard Thaxton. Thereafter, in March, 1919, Thaxton, with consent of the insurance company, assigned this policy to the defendant First National Bank to secure his indebtedness to it in the sum of about $3,000. Thaxton paid premiums on the policy for several years, but failed to pay the one for 1927, which was due in March of that year, and in the following September a special field representative of the insurance company called upon Thaxton and induced him to surrender the old policy No. 14221 upon the condition that a new policy would be issued to him in the sum of $4,000 and that the surrender value of the old policy was to be accepted in payment of the first year's premium on the new policy which was to be issued in lieu of the former one. At that time the old policy was not in possession of Thaxton. He had previously assigned it to the First National Bank, one of the defendants herein, to secure an indebtedness due the bank of about $3,000 as hereinabove stated, and the

policy remained continuously thereafter in its possession. Since the insurance company had previously accepted and approved of such assignment it became necessary that the consent of the First National Bank be had before the original policy could be legally converted. The field representative of the insurer and Thaxton then went to the office of the First National Bank in September, 1927, and explained to its cashier the contemplated plan of conversion of policy No. 14221 and asked him if he would sign for the bank a request therefor. The cashier thereupon agreed to sign, and did sign, such request on condition that the new policy should be assigned to the bank as security for Thaxton's indebtedness to the bank, and upon the further understanding that the field representative would see to it that the First National Bank's rights in the new policy were duly protected, and that this new policy would be forwarded to the bank properly assigned by Thaxton, and meanwhile the bank should retain the old policy No. 14221 until all the details of the conversion were worked out. Upon such understanding the cashier of the bank signed the request for the conversion of policy No. 14221 about September 12, 1927, but retained and kept the policy itself in its own files to await completion of the contemplated conversion deal. No information, however, ever came to the cashier, or to the bank, regarding the new contemplated policy between the time that such request for conversion was made and the death of Thaxton, which occurred about November 3, 1928. The original policy No. 14221 being still in the bank's possession, the cashier supposed, and rightfully so, that the contemplated conversion was not carried out.

Soon after Thaxton's death, the First National Bank made demand upon the insurance company for the payment to it as assignee of the amount due on policy No. 14221, and it was then that the bank first learned that a new policy had been written on the life of Thaxton in the fall of 1927 and in May, 1928, had been assigned to the

Bent County Bank, one of the defendants in this action, which assignment had been accepted by the insurance company, the new policy being No. 42402 for the sum of $4,000. The Bent County Bank made demand of the insurance company for the payment of policy No. 42402. The insurance company refused to pay either bank and filed in the district court of Bent county this alleged bill of interpleader to compel the two defendant banks to interplead and set forth their respective claims against the plaintiff.

The record is clear that the Bent County Bank, to which the new insurance policy No. 42402 had been assigned as security for the new loan of Thaxton, had no knowledge at the time that the original policy No. 14221 was in existence. The situation then was, however, that the insurance company had issued these two insurance policies, the earlier one having been assigned by the insured to the First National Bank as security for a loan which the bank had made to him, and the other and later policy was in possession of and held as security for a debt of the insured Thaxton to the holder, the assignee Bent County Bank. The avowed object of the insurance company was, by its so-called bill of interpleader, to have determined the rights of the parties under the state of facts hereinbefore detailed.

 Whether this is strictly a bill of interpleader, or a bill in the nature of a bill of interpleader, we think the trial court was right in its judgment that the case as made by the insurance company in its pleading, and sustained by the evidence, did not entitle it to the relief demanded, which was that the respective defendants be required to interplead in the cause. In passing, however, it is pertinent to say that in 33 C. J., p. 423, it is said that a bill in the nature of a bill of interpleader is distinguished from a bill of interpleader proper in that in the former there are grounds of equitable jurisdiction, other than the mere right to compel defendants to interplead, by which affirmative equitable relief may be

awarded. A bill in the nature of a bill of interpleader will lie by a party in interest to ascertain and establish his own rights where there are other conflicting rights between third persons. In 33 C. J., p. 421, the author says a bill seeking to determine complainant's liability to the respective defendants, no question being raised between them, is not strictly a bill of interpleader, and while the issues may be determined on a bill in the nature of a bill of interpleader, in the absence of objection, it must be treated as a bill in equity to determine complaintant's own rights. In 33 C. J., p. 464, §59, it is said: "If defendants agree that the bill is properly filed, or the fact appears by the pleadings and proofs, it is usually ordered or decreed that upon bringing the money or other thing into court, plaintiff shall be dismissed with costs. That settles the case so far as plaintiff is concerned, and this is the only decree which can be entered in favor of plaintiff and against defendants in a strict interpleader suit, plaintiff not being entitled to affirmative relief in such a suit. But on a bill in the nature of a bill of interpleader, plaintiff or complainant may have affirmative relief." At section 60, p. 465, it is said: "The order of interpleader is not in any sense a matter of right. The granting of such an order is always in the discretion of the court, and even where the case is a proper one for interpleader * * * it is still within the discretion of the court to remit the party to his action and refuse relief upon summary application."

It seems entirely clear that the case as made by the plaintiff is not a proper one for granting to plaintiff the relief demanded. In *National Life Insurance Company v. Pingrey*, 141 Mass. 411, the bill of interpleader in that case was, as here, brought to determine the respective rights of the defendants under two policies of insurance issued by the plaintiff. The court, in a decision by Mr. Justice Allen said: "By issuing the two policies, the plaintiff has exposed itself to both of these claims, and must meet them as best it may. The difficulty of

maintaining the bill of interpleader is not technical, but fundamental. In this form of proceeding, we cannot inquire whether the plaintiff has incurred a double liability. That result is possible. The plaintiff ought to be in a position to be heard upon the question; but on a bill of interpleader, which assumes that the plaintiff is merely a stakeholder, the plaintiff cannot be heard. * * * A plaintiff cannot have an order that the defendants interplead, when one important question to be tried is, whether, by reason of his own act, he is under a liability to each of them.''

That is precisely one phase of the case now before us as to plaintiff's right to any relief. The insurance company by its own act, not influenced by any action on the part of either of the defendants, issued two policies of insurance to the same person who thereafter assigned one to each of the two banks as security for a debt. The plaintiff strenuously resisted all efforts of the defendants to secure a dismissal of its bill of interpleader until it despaired of success on the merits, and it was only when it anticipated defeat that it sought a dismissal of its own bill. When this action of the plaintiff was taken each defendant had already filed a separate answer to the bill of interpleader and had set up by way of cross-complaint or counterclaim its right to a recovery on the assigned policy that it held. The question of insufficiency, however, in the peculiar circumstances of this case is a matter of no importance here, for it is entirely clear from this record that each of the banks in this action was entitled to recover, each one upon a separate policy of insurance issued by the plaintiff, which had been assigned respectively by Thaxton the insured. The plaintiff strenuously contends that, because its bill of interpleader was improperly filed and should be dismissed, it is not liable in this action upon either of these policies. There is no merit in this contention.

The insurance company, however, insists that affirmative relief in an interpleader action may not in

any event be awarded to the defendants. Whatever may be the general rule in such cases it has no application to the peculiar facts of this case. In making such statement, however, we are not to be understood as conceding the correctness of this position of the plaintiff. And this is so because of its own allegation in its interpleader bill and its prayer for relief. In the closing paragraph of its complaint the plaintiff alleges: "That it has no adequate remedy at law and that unless this court takes jurisdiction of this cause and requires the defendants to interplead herein, claiming said money or disclaiming any interest therein, the plaintiff will be subjected to a multiplicity of suits and also of having judgments rendered against it in favor of more than one of the said defendants." And in its prayer for relief plaintiff specifically prays: "That each of the above named defendants be required to interplead in this cause and make whatever claims they may have against the plaintiff on account of the facts herein stated, and that all of the claims of the defendants and matters in dispute between them and the plaintiff be settled by the judgment of this court and that the defendants be enjoined and restrained from instituting or prosecuting any action against the plaintiff on account of the facts herein stated." In the light of this declaration by the plaintiff in its own bill of interpleader, and in its demand that the defendants shall set up and have determined whatever claims they, or each of them, may have against it, plaintiff certainly may not now be heard to assert that the trial court committed error in deciding the very issues which it asked to have determined. We said in *Whitlock v. Alliance Coal Co.*, 73 Colo. 205 (214 Pac. 546), at page 211: "It is a familiar rule that a court of equity, once having obtained jurisdiction of a cause for one purpose, may dispose of all controverted questions presented by the issues." And in *Cobbey v. Peterson*, 89 Colo. 350 [3 P. (2d) 298], at page 354, we again approved of the general rule that: "When a court of equity has acquired jurisdiction it may do

whatever is necessary to effect justice even if in so doing it awards relief ordinarily cognizable only in courts of law.'' And the opinion cites a large list of cases so holding.

The judgment of the trial court was fully justified by the pleadings and the evidence produced. Judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.