James G. CLAWSON et al., Plaintiffs
and Respondents,

v.

Bruce L. MOESSER and Ruth Ann Moesser,
husband and wife, Defendants
and Appellants.

No. 13653.

Supreme Court of Utah.

May 2, 1975.

Kay M. Lewis, Michael J. Barrett, Jensen & Lewis, Salt Lake City, for defendants and appellants.

Ken Chamberlain, Olsen & Chamberlain, Richfield, for plaintiffs and respondents.

ELLETT, Justice:

The Moessers appeal from an adverse summary judgment holding that respondents, hereafter referred to as Clawson, had a superior title to certain real estate.

The facts are a bit complex but not in dispute.

Spaulding and Mid-Continent Construction Company entered into a trust deed agreement with Walker Bank & Trust Company on September 8, 1966, wherein Walker Bank was beneficiary. Thereafter Clawson obtained a judgment against Spaulding and Mid-Continent, and on April 10, 1969, at the execution sale Clawson bid the property in for $800.00, and no redemption was ever made by Spaulding or Mid-Continent. On October 16, 1969, a sheriff's deed was issued to Clawson. This deed is the basis of plaintiffs' claim to the land.[1]

Prior to the delivery of the sheriff's deed to Clawson, Walker Bank began a suit to treat the trust deed as a mortgage and to foreclose the same. A lis pendens was duly filed by Walker Bank on July 25,

---

1. Clawson thereafter deeded the Olsens and the Chamberlains a one-third interest each in and to the property.

1969. The defendants in that suit were Spaulding, Mid-Continent, and Clawson. On October 25, 1969, Clawson stipulated that "the plaintiffs trust deed has priority over any right, title, or interest of said defendants in said property and the interest of the defendants was acquired subsequent to the filing of said instrument by the plaintiff."

This stipulation was not necessary, as it is obvious that the trust deed had priority over the deed of Clawson obtained at the execution sale on the Clawson judgment. When the Clawsons purchased at the execution sale, they got only the rights of Spaulding and Mid-Continent and took subject to the superior trust deed of Walker Bank.

Walker Bank foreclosed its trust deed-mortgage and got a personal judgment in excess of $70,000.00 against Spaulding and Mid-Continent. The sheriff pursuant to foreclosure sold the realty to McArthur for $6,900.00, and the court after deducting costs and interest from the proceeds applied the sum of $5,726.68 towards satisfaction of the judgment, leaving a personal judgment of some $65,000.00 against Spaulding and Mid-Continent.

Within the time allowed by law Spaulding redeemed the land and thereby became the owner of the realty. The mortgage was exhausted, and no further proceeding under it was possible. However, the deficiency judgment of Walker Bank would attach to any realty which either Spaulding or Mid-Continent might have at the time or might thereafter acquire within the eight-year statute of limitation.[2]

■ It cannot be disputed that McArthur would have a superior title to that of Clawson for the reason that Clawson originally took subject to the superior trust deed to Walker Bank, and Clawson's interests were terminated by the judgment of foreclosure.

When Spaulding redeemed and paid McArthur, he gave no vitality to Clawson's defunct claim.

That Spaulding had a sufficient interest in the property after his rights were terminated by the execution sale to Clawson to redeem from the foreclosure is settled by the better-reasoned cases of the various states.

The case of Chautauqua Co. Bank v. Risley, 19 N.Y. 369, 373, dealt with a case of a judgment debtor who had parted with his title. The court speaking of his right to redeem said: "The right is secured to him as the judgment debtor, by the terms of the statute, notwithstanding he may have parted with all his interest in the land."

Other cases holding that a judgment debtor can redeem from judgment sales although he parted with title prior to sale are Yoakum v. Bower, 51 Cal. 539 and Harvey v. Spaulding, 16 Iowa 397, 85 Am. Dec. 526.

■ There can be no difference in the interest of one who loses his land to a judgment creditor on execution and one who voluntarily parts with his title by deed. It is certainly true that judgment debtors without title to the land sold on execution have an equitable interest in the land in that they are entitled to have the land sold and the proceeds thereof applied to reduce their indebtedness, and a personal judgment can be rendered against them only for the deficiency after deducting the proceeds of sale.[3]

Section 78-37-6, U.C.A.1953, provides that redemptions under mortgage foreclosure sales are permitted as in cases of redemption from execution sales; and Rule 69(f)(1), U.R.C.P., provides:

Who May Redeem. Property sold subject to redemption, or any part sold separately, may be redeemed by the following persons or their successors in interest: (1) The judgment debtor; (2) a creditor having a lien by judgment or mortgage on the property sold, or on some share or part thereof, subsequent to that on which the property was sold.

2. Secs. 78-12-1, 78-12-22, U.C.A.1953.

3. Section 78-37-2, U.C.A.1953.

It is, therefore, clear that in this case Spaulding, being the judgment debtor, could redeem from the foreclosure sale, and having done so, and the Clawsons not attempting to redeem from him, he had the title to the land. Thereafter Walker Bank caused execution to issue on the land owned by Spaulding, and at execution sale the Moessers purchased the land for $4,100. Neither Spaulding nor Clawson redeemed from the Moessers, and Moessers now have the title to the land.

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment for appellants. Costs are awarded to the appellants.

HENRIOD, C. J., and TUCKETT and MAUGHAN, JJ., concur.

CROCKETT, Justice (dissenting) :

I dissent. As between the parties hereto, the plaintiffs Clawson were first in time, and first in right, in acquiring title to the subject property by execution on their judgment. They purchased at sheriff's sale in April 1969; and after the six-month redemption period had expired,[1] the sheriff's deed was issued and recorded in October 1969. The defendants Moesser rely on a similar deed issued on a sheriff's sale which was much later in time, March of 1973, and which had no superior status to that relied on by the plaintiffs.

The difficulty and confusion that exist in this case arise because, after the Clawsons received their certificate of sale in April 1969, Walker Bank & Trust Company, in July of the same year, commenced foreclosure proceedings against the subject property, on a trust deed (mortgage) which the owners had executed in 1966. The Clawsons, plaintiffs in this suit, were made defendants in that one; and they entered into a stipulation that:

> . . . the Plaintiff's [Walker Bank's] trust deed has priority over any right, title, or interest in said property and the interest of the defendants [Clawsons]

was acquired subsequent to filing of said instrument by plaintiff.

The judgment based thereon ordered "that all right, title and interest of all defendants in this action in and to the above described property, *save the statutory right of redemption*, be forever barred and foreclosed." (Emphasis added.)

The mortgage foreclosure sale, conducted in December 1969, was not sufficient to cover the mortgage debt, and a judgment for the deficiency was entered in favor of Walker Bank, and before the redemption period had expired, on June 28, 1970, the property was redeemed by the debtors (Mr. Spaulding) for the amount of the foreclosure sale. Thereafter, upon the claim that ownership and title to the property had thus been restored in Spaulding, Walker Bank, in February 1973, issued execution upon its deficiency judgment and levied against this same property. It was at that sale that the defendants Moesser purchased and base their claim of ownership.

It is the position of the defendants that by the terms of the stipulation above quoted, and the judgment based thereon, any interest of the defendants in that action (including Clawsons, plaintiffs here) must be deemed inferior to the then plaintiffs (Walker Bank) and their successors, the defendants Moesser. But that stipulation should be looked at in the light of the circumstances then existing and what it is fair to believe was the intent of the parties. The sole purpose of that proceeding was the *foreclosure of the Walker Bank trust deed*. The stipulation was in furtherance of that purpose: to recognize that the Bank's trust deed took priority over the claim of the defendants only in *that* proceeding; and only *insofar as the foreclosure of the trust deed* was concerned. But the Clawsons had not been parties to the note and trust deed, and I can see no reason in law or justice to suppose that they intended to be, or that they should be, bound by any deficiency aspect of the judgment. The deficiency judgment was

1. Rule 69(e) (6), U.R.C.P.

only against the mortgagors, Mid-Continent and Spaulding, who had signed and were obligated on the note and mortgage; and they were given the right of redemption; and that judgment had no other effect upon the interest of the Clawsons in the property.

When Spaulding redeemed, the result was *to remove the Walker Bank mortgage, and the judgment of foreclosure,* that had been entered against the property. The Bank's subsequent execution on their deficiency judgment causes these questions to arise: When a mortgage is thus foreclosed, does that exhaust the effect of the mortgage, or does a deficiency judgment remain as a further mortgage lien against the property, or does it have only the same effect as any other judgment against the judgment debtor and his property?

I think there are sound reasons why the foreclosure of a mortgage should exhaust the interest the mortgagee can claim in the pledged property by reason of the mortgage. In the first place, the mortgagee has obtained all the contract calls for with respect to that property,[2] i. e., to have its value stand as security for his debt. When he has received that value and applied it on the debt, that is all he is entitled to from the security. The difficulty with the opposite result is that it allows the mortgagee (Walker Bank) to have, in effect, two first mortgages on the property: the first, which I think should be deemed to be completely spent and removed by the foreclosure proceeding and redemption; and the second, if the mortgagee is allowed priority on his deficiency judgment lien, he can again foreclose on the same property, asserting superiority over other prior and valid claims against the property, such as the plaintiffs here. Under such a concept, the mortgagee could bid the property in for a small amount, take his deficiency judgment, and so proceed again and again.

This would tend to thwart the purpose of the mortgage foreclosure procedure, which is to assure that the mortgagor, who is being forced to forfeit his property, gets the highest credit obtainable on his debt.[3] This reasoning, and the result advocated herein, are in accord with the frequently cited and leading case on this subject;[4] and with the judgment of the trial court.

Reverting to the essential facts in the light of the foregoing: When Mr. Spaulding redeemed from the mortgage foreclosure, it is my view that the effect was to *remove and satisfy the Walker Bank mortgage and the judgment by which it had been foreclosed;* and that the deficiency judgment had no superior status to any other judgment lien. I cannot see how the effect of that redemption and wiping out of the mortgage and judgment can properly be regarded as having the effect, either of initiating a new title in Spaulding, or of quieting title in him by removing other prior and valid claims, i. e., the Clawsons. Since Clawsons' sheriff's deed had previously been issued pursuant to valid execution proceedings, and was subject only to whatever effect the Walker Bank mortgage had, when that mortgage and judgment were removed by the redemption, Clawsons' title became free from their effect and should prevail over the later attempted foreclosure of a general judgment lien by Walker Bank, through whom the Moessers claim.

It should be stated that inasmuch as Mr. Spaulding has by his redemption paid off the Walker Bank mortgage (trust deed), which relieves the property of that obligation, and which the plaintiffs by their stipulation acknowledged as prior to their own interest therein, the Clawsons should in good conscience and equity be required to reimburse Spaulding (or his successors, Moessers, if they in effect paid it) for the amount of that redemption.

2. Ulrich v. Lincoln Realty Co., 180 Or. 380, 175 P.2d 149 (1946).

3. Salsbery v. Ritter, 48 Cal.2d 1, 306 P.2d 897 (1957).

4. Simpson v. Castle, 52 Cal. 644 (1878).

In summary and conclusion: It is my judgment that equity and justice would best be served as between these parties by recognizing the superiority of the claim of the plaintiffs Clawson, who first acquired the property by execution on their judgment and foreclosure of their judgment lien, as compared to the defendants Moesser, who rely on a similar but later proceeding. But that as above indicated, the plaintiffs Clawson should be required to make reimbursement for the paying off and removal of the Walker Bank mortgage lien, to which they acknowledged their own claim to be inferior.